1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Michael Grady; Jennifer Grady,          )   No. CV 11-2060-PHX-JAT
                                            )
10                  Plaintiffs,             )   **ORDER**
                                            )
11  vs.                                     )
                                            )
12                                          )
    Bank of Elmwood; Elmwood Financial)
13  Corporation; Jonathan Levin; Sarah Levin,)
                                            )
14                  Defendants.             )
    _____)
15  Tri City National Bank,                 )
                                            )
16                  Counterclaimant,        )
                                            )
17  vs.                                     )
                                            )
18  Michael Grady and Jennifer Grady,       )
                                            )
19                  Counterdefendant.       )
    _____)
20  The    Federal    Deposit    Insurance)
    Corporation  as  Receiver  for  Bank  of)
21  Elmwood,                                )
                                            )
22                  Intervenor.             )
    _____)

23

24          Pending before the Court is Plaintiffs' Motion for Leave to File and Serve a Second

25  Amended Complaint ("Motion to Amend"). (Doc. 10-3.) Defendants Jonathan Levin and

26  Sarah Levin (the "Levins"), Counterclaimant Tri City National Bank ("TCNB"), and

27  Intervenor the Federal Deposit Insurance Corporation as Receiver for the Bank of Elmwood

28  ("FDIC") all filed Responses to Plaintiffs' Motion to Amend (Docs. 11-13.) Plaintiffs filed

1  a Reply in Support of their Motion to Amend.  (Doc. 22.)  The Court now rules on the

2  motion.

3         **I.     FACTS**

4         In mid-2008, Plaintiffs engaged in discussions with the Bank of Elmwood ("BOE")

5  to obtain financing that would be secured by their residence.  (Doc. 10-1 at 4.)  The alleged

6  proposal from BOE included a first loan ("First Loan") for $1,827,717 and a second loan

7  which would be a home equity line of credit ("Second Loan" or "HELOC") for $400,000.

8  (*Id.* at 12.)  BOE closed on the First Loan on approximately September 5, 2008.  (*Id.*)  BOE

9  conditioned proceeding with the Second Loan, on receipt of the Plaintiffs' 2007 tax returns.

10  (*Id.*)  In November 2008, BOE advised the Plaintiffs that they would not close on the Second

11  Loan.  (*Id.* at 13.)

12         After learning that they would not receive the Second Loan, Plaintiffs unsuccessfully

13  attempted to secure a second loan from other lenders.  (*Id.* at 15.)  Plaintiffs had sought the

14  Second Loan to fund various costs as well as make payments on the First Loan.  (*Id.* at 14.)

15  Plaintiffs quit making payments after the November 2008 payment.  (Doc. 10-1 at 14; Doc.

16  10-2 at 5.)  On May 11, 2009, BOE noticed a trustee's sale for Plaintiffs' residence,

17  scheduled for August 11, 2009.  (*Id.* at 38.)

18         Plaintiffs filed their initial Complaint on July 10, 2009.  (*See* Doc. 22 at 3.)  Four days

19  later, prior to any action by Defendants, Plaintiffs filed their First Amended Complaint.  (*Id.*)

20  Plaintiffs' First Amended Complaint is the operative complaint and contains twelve counts

21  including a request for a preliminary injunction to stop a trustee's sale.  (Doc. 10-1 at 38.)

22  In October 2009, the Maricopa County Superior Court issued an injunction barring BOE

23  from proceeding with the trustee sale of the Plaintiffs' home.  (Doc. 22 at 4.)  The state court

24  based this decision in part on Plaintiffs' likelihood of demonstrating violations of the Arizona

25  Consumer Fraud Act.  (*Id.*)

26         On October 23, 2009, the State of Wisconsin Division of Banking, Department of

27  Financial Institutions closed BOE and caused the FDIC to be appointed its receiver.  (Doc.

28  12 at 2.)  On the same day, the FDIC sold all of BOE's assets to TCNB, including the

1  Plaintiffs' First Loan. (*Id.*)  In May 2010, TCNB intervened in this matter as to one claim

2  in part and one claim in full.[1] (*Id.*; Doc. 10-3 at 4.)

3  　　　The state court granted the FDIC's motion to be substituted in place of BOE for

4  counts one through ten and count twelve of Plaintiffs' First Amended Complaint on July 7,

5  2010.  (Doc. 12 at 3.)  The FDIC removed the suit to this Court on August 5, 2010.  (*Id.*)

6  Because all claims against the FDIC must be addressed in an administrative proceeding, the

7  Plaintiffs agreed to dismiss the FDIC on October 13, 2010. (Doc. 12-1 at 10.) On December

8  7, 2010 this Court remanded the case back to the state court.  (Doc. 12 at 4.)

9  　　　Pursuant to a state court scheduling order, Plaintiffs filed this Motion to Amend on

10  June 22, 2011.  (Doc. 22 at 6.)  The proposed Second Amended Complaint ("SAC") adds as

11  additional defendants TCNB; Jess Levin and spouse; Michael F. Benben, Jr. and spouse;

12  David C. Easley and spouse; S. John May and spouse; and William H. Pugh III and spouse.

13  (Doc. 10-3 at 2.)  The SAC also adds additional claims for violations of various provisions

14  of 15 United States Code ("U.S.C.") section 1601 et seq., 15 U.S.C. section 2601 et seq.,

15  Regulation Z of the Federal Reserve Board, and 15 U.S.C. section 1691. (*Id.*)  The SAC also

16  adds a claim for Declaratory Judgement and claims for Slander and Slander of Title. (*Id.*)

17  　　　On July 22, 2011, the FDIC filed a motion to intervene to oppose this Motion to

18  Amend on the basis that the claims the Plaintiffs seek to assert against TCNB can only be

19  asserted against the FDIC and were previously dismissed with prejudice by the Plaintiffs.

20  (Doc. 1 at 6.)  On October 5, 2011, the state court granted FDIC's motion to intervene and

21  on October 20, 2011, the FDIC removed the case to this Court for the second time. (*See id.*)

22  Plaintiffs' filed a Notice of Filing of Pending Motions with this Court on November 3, 2011

23  including their Motion to Amend and file the SAC.  (Doc. 10 at 2.)

---

25  　　　[1] TCNB intervened as to Plaintiffs' cause of action number ten for violations of the
26  Truth-in-Lending Act ("TILA") and the Real Estate Settlement Procedures Act to the extent
that those claims pertain to the loan TCNB purchased. (Doc 12 at 2.) TCNB also intervened
27  as to Plaintiff's cause of action number eleven for a preliminary injunction to prevent
foreclosure of the residence due to Plaintiffs' default on the note now owned by TCNB. (*Id.*
28  at 3.)

1     **II.     LEGAL STANDARD**

2         After a party has amended a complaint once, the party may only amend further after

3     gaining consent from the adverse party or leave from the court. *Eminence Capital, L.L.C.*

4     *v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The Court should freely give leave to

5     amend "when justice so requires." FED. R. CIV. P. 15(a)(2).  Whether to grant a motion to

6     amend depends on the following factors: (1) undue delay, (2) bad faith, (3) prejudice to the

7     opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended

8     his complaint. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).

9     The party opposing the amendment bears the burden of showing futility or one of the other

10    permissible reasons for denying a motion to amend.  *DCD Programs, Ltd. v. Leighton*, 833

11    F.2d 183, 187 (9th Cir. 1987).  A showing of futility can justify the denial of a motion to

12    amend. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Moore v. Kayport Package*

13    *Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (if a proposed amended complaint is subject to

14    dismissal, leave to amend need not be given).

15    **III.    ANALYSIS**

16         A.     Futility of Amended Complaint

17        Plaintiffs argue that the only significant changes between the First and Second

18    Amended Complaints are counts eleven through sixteen. (Doc. 22 at 5.) Counts one through

19    ten, thirteen and fourteen, deal with events surrounding the origination of the First Loan and

20    the alleged promise by BOE to finance the Second Loan. (*See* Doc. 10-3).  Counts eleven

21    through thirteen discuss the terms of disclosure, provided by BOE, related to the First Loan.

22    (*Id.*).  Counts fifteen and sixteen are new causes of action and relate to BOE's actions in

23    regards to the enjoined trustee sale and subsequent damage to the Plaintiffs' credit reputation.

24    (*Id.* at 128.)

25              1.     Counts One through Fourteen

26         TCNB argues that the FDIC retains the liabilities for BOE, unless the liabilities are

27

28

- 4 -

1  expressly transferred to TCNB.[2]  (Doc. 12 at 9); *Payne v. Security Sav. & Loan Ass'n, F.A.*,

2  924 F.2d 109, 111 (7th Cir. 1991).  The FDIC explicitly sets forth liabilities assumed by

3  TCNB in Article 2 of the purchase and assumption agreement ("P&A Agreement") entered

4  into by the FDIC and TCNB.[3]  (Doc. 22 at 40); *see Payne*, 924 F.2d at 111; *see also Vernon*

5  *v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990).

6        Congress granted the FDIC authority to enter into a purchase and assumption

7  agreement in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

8  ("FIRREA").  *See* FIRREA, Pub. L. No. 101-73, § 101 (1989).  The FDIC's powers under

9  FIRREA "include the ability to transfer or retain any liability of the failed bank" and the

10  "sweeping authority to manage the affairs of a failed bank."  *GECCMC 2005-C1 Plummer*

11  *St. Office Ltd. v. JPMorgan Chase Bank, Nat. Ass'n*, __ F.3d __, 2012 WL 280742, at \*6 (9th

12  Cir. Feb. 1, 2012).  FIRREA provides a jurisdictional bar "to claims asserted against a

13  purchasing bank when the claim is based on the conduct of the failed institution."  *Benson*

14  *v. JPMorgan Chase Bank, N.A.*, __ F.3d __, 2012 WL 917579, at \*7 (9th Cir. Mar. 20,

15  2012).

16        Here, TCNB argues that they have not assumed liability for any alleged promise by

17  BOE to proceed with additional financing or for statutory or regulatory violations brought

18  by the Plaintiffs based on events from the origination of the loan. (Doc. 12 at 9, 15.)  TCNB

19  asserts that the P&A Agreement defines in Article 2.1 the only liabilities assumed by TCNB.

20  (*See* Doc. 22 at 51.)  These include liabilities such as assumed deposits, liability secured by

21  assets purchased by TCNB, liability for any "acceptance or commercial letter of credit," and

22  for liability for any "unfunded portion of a line of credit or other commitment reflected on

---

24      [2]The FDIC claims to have retained liability for counts one through ten and count

25  twelve of the First Amended Complaint.  (Doc. 13 at 6.)

26      [3] Plaintiffs incorporate the P&A Agreement into the SAC by stating in paragraph

27  fifteen that TCNB " acquired certain assets of [BOE] pursuant to [the P&A Agreement]" with

28  the FDIC. (Doc. 10-3 at 12.)  The P&A Agreement is publicly available and no party disputes its authenticity or contents.

1   the books and records of the Failed Bank to make an extension of credit . . . that was legally

2   binding on [BOE]." (*Id.* at 45, 51–52.)  TCNB further argues that no transfer of liability can

3   be assumed from silence in the P&A Agreement.  (Doc. 12 at 9.)

4           In contrast, Plaintiffs suggest that TCNB did assume liability for borrowers' claims

5   based on the P&A Agreement's silence as to whether or not these liabilities transferred from

6   the FDIC.  *See McCann v. Quality Loan Serv. Corp.*, 729 F. Supp. 2d 1238, 1241 (W.D.

7   Wash. 2010).  In *McCann* and *Grossen v. JPMorgan Chase Bank*, the courts found that

8   Article 2.5 states that the assuming bank is not a successor to liabilities related to the

9   origination of the loan. *McCann*, 729 F. Supp. 2d at 1241; *Grossen*, __ F. Supp. 2d __, 2011

10  WL 4939828, at *4 (W.D. Wash. 2011).  This does not imply that a P&A Agreement without

11  a provision similar to Article 2.5 transfers liabilities related to the origination of the loan.

12  Rather, liabilities not specified in the P&A Agreement are retained by the FDIC.  *Payne*, 924

13  F.2d at 111 ("[b]y default, all other liabilities [not specified] remained the responsibility of

14  [the receiver]").  As such, if TCNB is liable for Plaintiffs' counts one through fourteen, then

15  Article 2.1 must specifically transfer this liability to TCNB.

16          Article 2.1 contains twelve types of liabilities assumed by TCNB.  (Doc. 22 at 51–52.)

17  Liability for a second loan that BOE never closed upon or any form of additional financing

18  does not fall under any of the categories.  Because there is no legally binding document for

19  the unfunded line of credit that would have been the second loan, this liability does not fall

20  under Article 2.1(i) or anywhere else under Article 2.1.  (*Id.* at 52.)  Likewise, Article 2.1

21  does not contain a provision transferring liability to TCNB for unliquidated damage or other

22  claims by borrowers for acts by BOE employees relating to the origination of the Plaintiffs'

23  First Loan.  Plaintiffs' SAC alleges various federal and state statutory violations as well as

24  regulatory violations, but only provides examples based on actions taken by BOE.[4]  (Doc.

25

26          [4]Plaintiffs specify only a few statutory and regulatory violations, including incorrect
27  calculations of the annual percentage rate pursuant to the loan, incorrect calculations of the
    finance charge, incorrect calculation of the amount financed, and incorrect calculation of the
28  total payments.  (Doc. 10-3 at 115.)  All are "contained in the loan documents assigned to

1    10-3 at 115.)  And Plaintiffs cannot proceed here against a purchasing bank for actions or

2    omissions, such as an alleged failure to make TILA disclosures, of the failed bank.  *See*

3    *Benson*, 2012 WL 917579, at *1 ("[A] claim asserted against a purchasing bank based on the

4    conduct of a failed bank must be exhausted under FIRREA").  For the foregoing reasons, the

5    proposed SAC is futile insofar as it seeks to add TCNB as a defendant to counts one through

6    fourteen.

7           Plaintiffs argue in the alternative, that the claims they are asserting against TCNB are

8    actually affirmative defenses. (Doc. 22 at 8–9.)  To support this argument they refer to three

9    cases.  *See In re Parker North American Corp.*, 24 F.3d 1145 (9th Cir. 1994) (allowing a

10   borrower's preference action against the receiver for a failed bank to proceed); *see also*

11   *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 792 (9th Cir. 1993)

12   (discussing that the Fed. R. Civ. P. 8(c) "allows the court to treat the pleading as an

13   affirmative defense rather than a counter claim"); *see also Federal Sav. And Loan Ins. Corp.*

14   *v. Mackie*, 962 F.2d 1144 (5th Cir. 1993) (discussing defendants right to assert affirmative

15   defenses against an bank which had purchased a failed banks assets so long as they did not

16   pertain to the oral agreement).  This argument might be relevant if Plaintiffs were moving

17   to amend their Answer.  But the ability to assert affirmative defenses does not translate to the

18   ability to plead a claim in a complaint.

19          Accordingly, Plaintiffs' Motion to Amend to assert claims against TCNB based on

20   liability for the alleged promise to enter into a second loan and liabilities related to the loan

21   origination are subject to dismissal, and as such, futile.[5]

22                          2.      Count Fifteen

23          TCNB and the Levins argue that count fifteen, Slander, is barred by the statute of

24   limitations.  (Doc. 11 at 4; Doc. 12 at 12.)  Under Arizona Revised Statutes section 12-541

25   _____

26   TCNB by the FDIC on behalf of [BOE]." (*Id.*)

27          [5] The Court need not consider the Defendants' other arguments as to why the SAC
     is futile with respect to the alleged promise by BOE to enter into the Second Loan with
28   Plaintiffs because the Court finds that FDIC retained liability for this alleged promise.

- 7 -

1   an action for slander "shall be commenced and prosecuted within one year after the cause of

2   action accrues." Ariz. Rev. Stat. Ann. § 12-541. In the SAC, Plaintiffs base this claim on

3   "sending of negative credit reports, noticing the trustee sale, and otherwise disseminating

4   such information" causing damage to Plaintiffs' reputation. (Doc. 10-3 at128.)

5        The SAC sets forth that in December 2008 BOE notified credit reporting agencies that

6   the Plaintiffs were thirty days past due on payments for the First Loan when Plaintiffs were

7   only twenty one days late. (*Id.* at 85.) Plaintiffs claim this had a tremendous negative impact

8   on their credit score. (*Id.* at 94.) The Plaintiffs' First Amended Complaint stated that BOE

9   noticed a trustees sale set for August 11, 2009. (Doc. 10-1 at 38.)

10        The Court agrees with TCNB and the Levins that the basis for the Slander cause of

11   action accrued on or before May 2009. The one-year statute of limitation therefore had run

12   when Plaintiffs filed the pending motion. As such, asserting this cause of action would be

13   futile.

14                            3.      Count Sixteen

15        TCNB argues that Plaintiffs' claim for Slander of Title, count sixteen, fails because

16   the Plaintiffs fail to allege the necessary element of malice. (Doc. 12 at 13.) Slander of Title

17   requires "the uttering and publication of the slanderous words by the defendant, the falsity

18   of the words, malice and special damages." *City of Tempe v. Pilot Properties, Inc.*, 527 P.2d

19   515, 522 (Ariz. Ct. App. 1974). Plaintiffs' SAC bases Slander of Title on TCNB failing to

20   release the lien after Plaintiffs' notice of rescission pursuant to 15 U.S.C. section 1635 et

21   seq., or on TCNB's failure to rescind the loan transaction upon request under state and

22   federal law. (Doc. 10-3 at 129.)

23        TCNB argues that Plaintiffs have not alleged malice in the SAC on the part of TCNB

24   and that this cause of action therefore fails on its face. (Doc. 12 at 13.) Plaintiffs do not

25   dispute this argument in their reply. (*See* Doc. 22.) The SAC states that in response to

26   Plaintiffs' letter requesting rescission of the deed of trust and promissory note, TCNB wrote

27   a letter taking the position that the Plaintiffs did not properly exercise a right to rescind.

28   (Doc. 10-3 at 118.) The Court agrees with TCNB that this letter does not demonstrate

1  malice, and that this claim as pleaded is subject to dismissal and therefore futile.

2                B.       Additional Defendants

3        Plaintiffs seek to add additional defendants Sarah Levin; Jess Levin and spouse;

4  Michael F. Benben, Jr. and spouse; David C. Easley and spouse; S. John May and spouse;

5  and William H. Pugh III and spouse.  (Doc. 10-3 at 67.)  These defendants replace unknown

6  parties and all were either a member of the board of directors of BOE, or a spouse of a board

7  member added because of principles of community property law.  (Doc. 10-3 at 69–70.)

8        The Levins argue that adding Sarah Levin is both prejudicial and untimely because

9  it will expand discovery and this case has been ongoing for over two years.  (Doc. 11 at 3.)

10  The Court disagrees that changing "Jane Doe Levin" to Sarah Levin and adding other board

11  members from BOE will prejudicially expand discovery.  Also, the Motion to Amend is

12  timely per a state court order allowing for a "[f]inal day for motions to amend pleadings" on

13  June 22, 2011.  (Doc. 22 at 22.)  Plaintiffs filed their Motion to Amend on June 22, 2011.

14  (Doc. 22 at 6.)  As such, Plaintiffs' Motion to Amend to add board members and spouses is

15  granted to the limited extent necessary to add as Defendants Sarah Levin; Jess Levin and

16  spouse; Michael F. Benben, Jr. and spouse; David C. Easley and spouse; S. John May and

17  spouse; and William H. Pugh III and spouse.

18        Accordingly,

19        **IT IS ORDERED** that Plaintiffs' Motion to Amend (Doc. 10-3) is **GRANTED** in

20  part and **DENIED** in part.  The motion is granted to the limited extent outlined above and

21  denied in all other respects.  Plaintiffs shall file the Second Amended Complaint naming the

22  new individual defendants, but with no other changes, within five days of the date of this

23  Order.

24        DATED this 4th day of April, 2012.

25

26  _____

27                               James A. Teilborg
                          United States District Judge

28