**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Grady and Jennifer Grady, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of Elmwood; et al.,<br><br>Defendants. | No. CV11-2060-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Plaintiffs' Emergency Second Motion for Partial Reconsideration (Doc. 70) and Emergency Motion for Issuance of a Temporary Restraining Order with Notice and Application for Preliminary Injunction (Doc. 75). The Court now rules on the motions.

**I.     SECOND MOTION FOR PARTIAL RECONSIDERATION**

Plaintiffs filed a Motion for Partial Reconsideration on May 1, 2012. (Doc. 50.) The Court denied that Motion on May 21, 2012. (Doc. 54.) Plaintiffs filed their pending Emergency Second Motion for Partial Reconsideration on July 20, 2012. (Doc. 70.)

In their Second Motion, Plaintiffs again seek reconsideration of portions of the Court's Order (Doc. 47) disposing of their Motion to Amend (Doc. 10). Specifically, Plaintiffs argue that the Court erred in not allowing Plaintiffs leave to amend the First Amended Complaint to state claims against TCNB, the purchasing bank, for violations of the Truth in Lending Act (TILA) committed by the failed bank, Bank of Elmwood. Plaintiffs now ask the Court to grant them leave to filed a Second Amended Complaint that: 1) alleges TILA claims against Defendant TCNB, based on alleged TILA violations

by the failed Bank of Elmwood, as set forth in Counts XI, XII and XIII of Plaintiffs' Proposed Second Amended Complaint (Doc. 10-3) previously submitted to the Court on November 3, 2011 and 2) alleges additional TILA violations against TCNB for its wrongful dishonor of Plaintiffs' notice of rescission under TILA.[1]

Plaintiffs' request that the Court allow them to file an amended complaint alleging additional, direct TILA Counts against TCNB not contained in the Proposed Second Amended Complaint is improper. In deciding the Second Motion for Reconsideration, the Court will review only the allegations in the Proposed Second Amended Complaint that the Court considered when it issued the April 4, 2012 Order — the Order Plaintiffs are asking the Court to partially reconsider. The Court cannot "reconsider" something that it has never before considered. If Plaintiffs want leave to allege additional Counts that they did not included in their November 3, 2011 Proposed Second Amended Complaint, then Plaintiffs should file another Motion to Amend. A motion for reconsideration is not the proper procedural vehicle for asking the Court to consider claims in the first instance.

The Court now turns to Plaintiffs' request for reconsideration of the Court's ruling that it would be futile to allow them to amend their complaint to add the TILA claims contained in Counts XI, XII and XIII of the Proposed Second Amended Complaint (Doc. 10-3). The Court will grant reconsideration to clarify certain points, but will deny all relief requested because the Court reaches the same result regarding futility after reconsideration.

---

[1] Plaintiffs' Second Motion for Reconsideration also sought a Court order directing TCNB to cease and desist in pursuing the Trustee Sale of their home currently set for August 13, 2012.The Court, in its July 20, 2012 Order, denied Plaintiffs' Second Motion for Reconsideration to the extent Plaintiffs intended the Motion to function as a motion for injunctive relief because the Motion does not discuss the factors set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). (Doc. 69.) Since the Court's July 20, 2012 Order, Plaintiffs have filed a separate Motion for Temporary Restraining Order addressing the *Winter* factors.

### A.   LEGAL STANDARD

Generally, motions for reconsideration are appropriate only if: 1) the movant presents newly discovered evidence; 2) the Court committed clear error or the initial decision was manifestly unjust; or 3) an intervening change in controlling law has occurred. *School Dist. No. 1J, Multnomah County, Oregon v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A party should not file a motion to reconsider to ask a court "to rethink what the court had already thought through, rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003); L.R.Civ.P. 7.2(g)(1). The Court ordinarily will deny a "motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." L.R.Civ.P. 7.2(g)(1).

### B.   ANALYSIS

Plaintiffs' Second Motion for Reconsideration does not cite to an intervening change in *controlling* law or new evidence. In fact, Plaintiffs cite to only one decision, an opinion from the District of Arizona, that was handed down after they filed their first Motion for Partial Reconsideration. Plaintiffs really argue, once again, that the Court committed clear error, resulting in potential manifest injustice, when it did not allow Plaintiffs to amend to add claims against TCNB based on the Bank of Elmwood's alleged TILA violations.

In its April 4, 2012 Order (Doc. 47), the Court denied Plaintiffs leave to amend to add claims against TCNB based on alleged TILA violations by Bank of Elmwood. The Court found it would be futile to allow Plaintiffs to amend because TCNB did not explicitly assume in the Purchase and Asset Agreement with the FDIC (the "P&A Agreement") liability for any TILA violations by the failed bank and because claims against a purchasing bank for wrongdoing by a failed bank must be exhausted under the

Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA).

### 1.  FIRREA Jurisdictional Bar

Congress enacted FIRREA following the saving and loan crisis of the 1980s to give the FDIC power to take all actions necessary to resolve problems posed by financial institutions in default. *Benson v. JP Morgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012). FIRREA gives the FDIC authority to act as receiver of a failed institution to protect depositors and creditors. *Id*. The statute provides detailed procedures for the FDIC's consideration claims of claims against the receivership estate. *Id*. (quoting *McCarthy v. FDIC*, 348 F.3d 1075, 1079 (9th Cir. 2003)("to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks."))

FIRREA requires a plaintiff to exhaust its administrative remedies with the FDIC before the plaintiff can file certain claims in court. *Benson*, 673 F.3d at 1211. The statute reads, in pertinent part:

> Limitation on judicial review.  Except as otherwise provided in this subsection, no court shall have jurisdiction over —
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. §1821(d)(13)(D).

In *Benson*, the Ninth Circuit Court of Appeals held that FIRREA's jurisdictional bar apples to claims against institutions that purchased assets of failed institutions from the FDIC when the claims are based on the conduct of the failed institution. "FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution." 673 F.3d at 1214. The *Benson* court further explained that if a plaintiff's claims rely on the alleged wrongdoing of a failed institution, those claims "plainly relate 'to any act or omission' of 'a depository

institution for which the FDIC has been appointed receiver,'" and therefore must be exhausted in administrative proceedings. *Id.* at 1215 (quoting 12 U.S.C. §1821(d)(13)(D)).

Plaintiffs' TILA claims in Proposed Counts XI, XII and XIII all stem from violations allegedly committed by the failed institution, but Plaintiffs are attempting to assert those claims against TCN. Plaintiffs' proposed claims against the purchasing bank are based on the conduct of the failed institution. The Court therefore found it would be futile to add those claims because Plaintiffs had not exhausted them through the FIRREA administrative process.

Plaintiffs attempt to distinguish *Benson* because that case did not involve a consumer mortgage. The Court finds no reason to distinguish *Benson* on that basis. *Benson's* analysis and interpretation of FIRREA's statutory language apply equally here.

Plaintiffs further argue that, unlike the plaintiffs in *Benson*, they did not have to exhaust their TILA claims through FIRREA's administrative process because Plaintiffs here are not creditors under FIRREA.[2] The Courts finds this argument unavailing. Plaintiffs may have been debtors with regard to the mortgage held by the failed institution, but they are potential creditors of the failed institution with regard to the claims asserted in this litigation.[3] Plaintiffs filed their lawsuit against the failed institution with the intention of becoming judgment creditors, or "general creditors."

---

[2] Plaintiffs explain that the *Benson* plaintiffs were creditors under FIRREA because they were purchasers of CDs from the failed defendant bank and therefore were "depositors." As such, the *Benson* plaintiffs had to exhaust their claims against the purchasing bank through the FIRREA process. But the *Benson* plaintiffs purchased fraudulent CDs from the individuals running a Ponzi scheme, not from the failed bank. 673 F.3d at 1209-10. The companies controlled by those individuals were the customers and depositors of the failed bank, and the companies deposited large sums received from the Ponzi scheme with the failed bank. *Id.* at 1210. The *Benson* plaintiffs were not customers of the failed bank, but they alleged the failed bank aided and abetted the Ponzi scheme by providing banking services to the companies controlled by the Ponzi scheme's principals despite actual knowledge of the fraud.

[3] Plaintiffs' claims against the failed institution were not incidental to judicial claims filed by the failed institution against them. Plaintiffs directly asserted their claims against the failed institution in this judicial proceeding.

And their proposed TILA claims fall under FIRREA's language limiting judicial review because the claims are "claim[s] . . . for payment from, . . . , the assets of" a failed institution and relate to an act or omission of the failed institution. 12 U.S.C. §1821(d)(13)(D).

Plaintiffs have not cited a Ninth Circuit Court of Appeals opinion handed down since *Benson* that carves out an exception to the FIRREA jurisdictional bar for TILA claims against a purchasing institution based on the conduct of the failed institution. But Plaintiffs have cited and the Court has found several district court opinions positing that the FIRREA exhaustion requirements do not apply to claims for *rescission* under TILA.[4] *See, e.g., Brabant v. JP Morgan Chase Bank*, 2012 WL 2572281 *11 n.4 (D.Ariz. July 2, 2012)("Plaintiffs correctly state that rescission of contract under the TILA does not require exhaustion under FIRREA. A TILA claim for rescission may be brought 'against any assignee of the obligation.'"); *Long v. JP Morgan Chase*, - - F.Supp.2d - -, 2012 WL 220791 (D.Haw. January 25, 2012); *Rundgren v. Washington Mut. Bank*, 2010 WL 4960513 (D.Haw. November 30, 2010).[5] Although not controlling, these opinions are at least persuasive.

The plaintiff in *Long v. JP Morgan* obtained a home loan from WaMu, which subsequently went into receivership. 2012 WL 220791 *1. The FDIC sold certain WAMU assets, including the plaintiff's loan, to JP Morgan Chase. *Id*. The *Long* plaintiff sued Chase for the alleged acts and omissions of WAMU pertaining to the origination of the loan. *Id*.

Chase argued that the District of Hawaii Court lacked jurisdiction over the

---

[4] These same decisions do not suggest that FIRREA exhaustion requirements should not apply to TILA claims for damages.

[5] The Court notes that the plaintiffs in the cases cited with favor by Plaintiffs had all also secured residential mortgages from failed banks. The courts nonetheless found that those plaintiffs' claims based on the failed banks conduct, with the exception of the TILA rescission claims, were subject to the FIRREA exhaustion requirements. These cases cut against Plaintiffs' argument that FIRREA exhaustion does not apply to them because they are not "creditors" under FIRREA.

plaintiff's claims against it because those claims related to the conduct of WAMU.  *Id.* at \*5.  Chase argued that those claims first had to be brought under the administrative claims process mandated by FIRREA.  *Id*.  The court agreed, stating, "Thus, to the extent that Plaintiff alleges claims against Chase for WaMu's conduct, those claims are subject to FIRREA's administrative process and the Court does not have jurisdiction over them."  *Id*. at \*6.

But the *Long* court went on to hold that to the extent the plaintiff alleged a TILA claim for rescission, the court did have subject matter over that claim.  *Id*.  The Court noted that a TILA rescission claim can be brought against any assignee of the obligation, 15 U.S.C. §1641(c), and that Chase was the current assignee of the plaintiff's mortgage loan.  *Id*.  "Any remedy of rescission Plaintiff may have must be invoked against the current holder of the mortgage loan."  *Id*. (citing *Rundgren*, 2010 WL 4960513 at \*6).  Relying on *Rundgren*, the *Long* court found that forcing the plaintiff to pursue rescission through the administrative FIRREA process against the FDIC, even though the FDIC no longer held the mortgage, would serve no purpose but to frustrate the borrower in seeking relief.  *Id*.

As previously stated, none of the district court opinions exempting TILA rescission claims based on the conduct of a failed institution from FIRREA's exhaustion requirements is binding on the Court.  Current Ninth Circuit law, as articulated in *Benson*, provides that FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claims are based on the conduct of the failed institution.  673 F.3d at 1214.  And Plaintiffs' TILA claims in Counts XI, XII and XIII of the Proposed Second Amended Complaint clearly are based on the conduct of the failed institution.

Nonetheless, because the Court finds the reasoning in *Long* and the other district court opinions regarding TILA rescission claims at least persuasive, and to avoid any potential manifest injustice, the Court will assume for purposes of the Second Motion for Reconsideration that Plaintiffs did not have to exhaust their TILA claims through the FIRREA administrative process and that the Court therefore would have jurisdiction to

entertain those claims. But even assuming the Court would have jurisdiction over the claims against TCNB based on Bank of Elmwood's alleged TILA violations, it still would be futile to add the proposed TILA claims for the reasons outlined below.

### 2. TILA Damages Claims

The Court first notes that it did not find any cases persuading it that a TILA claim for damages, as opposed to rescission, against a purchasing bank based on the conduct of the failed bank should not be subject to FIRREA's jurisdictional bar. Even so, in order to avoid any potential for manifest injustice, the Court will assume for purposes of this Motion that the jurisdictional bar does not apply to Plaintiffs' proposed TILA damages claims. But because TCNB did not assume liability for such claims in the Asset & Purchase Agreement ("P & A Agreement"), the Court finds it would be futile to allow Plaintiffs to amend to add the proposed TILA damages claims.

As set out more fully in the Court's April 4, 2012 Order (Doc. 47, pp.5-7), TCNB assumed only the liabilities explicitly listed in Article 2 of the P&A Agreement. *Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991)("By default, all other liabilities [not specified] remained the responsibility of the [the receiver]."). Because liability for a TILA damages claim does not fall under any of the categories listed in Article 2, the FDIC retained liability for Plaintiffs' TILA damages claims. Plaintiffs therefore cannot state a damages claim against TCNB for the failed bank's alleged TILA violations, and it would be futile to allow them to add such a claim.

### 3. TILA Rescission Claim

Assuming the FIRREA jurisdictional bar does not apply and that the P&A Agreement does not prevent a suit against TCNB, Plaintiffs' TILA rescission claim still fails as a matter of law because they have not alleged ability to tender the amount of the loan principal. *Hogan v. NW Trust Servs., Inc.*, 441 Fed.App'x. 490, 490 (9th Cir. 2011)("The district court properly dismissed appellants' TILA claim seeking rescission because appellants did not allege the ability to tender the proceeds of the loan.")

Plaintiffs contend that rescission of their loan was complete and that the mortgage

became void, at the very latest, when counsel immediately upon TCNB's receipt of the March 8, 2011 rescission letter. (Doc. 10-3, Proposed 2d Am. Compl., ¶205.) The Ninth Circuit Court of Appeals has rejected this argument. *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003). The *Yamamoto* Court held the theory that rescission is accomplished automatically upon a plaintiff's decision to rescind, communicated by a notice of rescission, without regard to whether the law permits rescission on the grounds asserted, makes no sense when the lender contests the ground upon which the borrower rescinds. *Id*

Plaintiffs argue that *Yamamoto* does not apply here, however, because TCNB has not effectively and legally contested rescission.[6] The plaintiffs in *Yamamoto* filed suit against mortgagee's assignee seeking rescission of a refinance loan based on the mortgagee's alleged TILA violations. *Id*. at 1168-69. The assignee in turn filed a third-party complaint against the original mortgagee and defended against the plaintiffs' rescission claims in the lawsuit the plaintiffs filed. *Id*. at 1172 ("[Assignee] contested the notice [of rescission] and produced evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements.")

Like the assignee in *Yamamoto*, TCNB contested Plaintiffs' notice of rescission[7] and, since intervening in Plaintiffs' lawsuit, has continued to contest Plaintiffs' notice of and grounds for rescission. But Plaintiffs argue that TCNB had to file a declarative action against them within twenty days of receiving the notice of rescission in order to effectively contest the rescission and bring this case within *Yamamoto*.

Requiring TCNB to file a separate action for declarative relief would make no sense given the facts of this case. The mortgage loan and possible rescission therefore already were at issue in the lawsuit filed by Plaintiffs at the time they sent the notice of rescission and TCNB had

---

[6] Plaintiffs make this argument in paragraphs 208-209 of the Proposed Second Amended Complaint (Doc. 10-3) and in the pending Motion for Issuance of a Temporary Restraining Order with Notice and Application for Preliminary Injunction (Doc. 75, pp. 8-12).

[7] TCNB's counsel, in a March 28, 2011 letter to Plaintiffs' counsel, objected to Plaintiffs' notice of rescission.

intervened in the suit to protect its rights under the mortgage. Both before the state court and this Court, TCNB continuously has contested Plaintiffs' right to rescission.

Moreover, nothing in the procedural history section of the *Yamamoto* opinion indicates that the assignee there, BNY, filed suit or a counterclaim against the plaintiffs, as Plaintiffs ask the Court to require here. The recited facts instead indicate that BNY somehow responded to the plaintiffs' notice of rescission and defended against rescission in the lawsuit brought by the plaintiffs. *Id*. at 1172.

The Court finds that by objecting to Plaintiffs' notice of rescission within twenty days via a letter to Plaintiffs' counsel and by contesting rescission in the ongoing lawsuit filed by Plaintiffs, TCNB effectively contested rescission. Therefore, this case is a "contested case" under *Yamamoto*.

And, in a contested case, the Court may alter TILA's procedural provisions regarding rescission. *Id*. at 1171; *but see Causey v. U.S. Bank Nat. Ass'n*, 464 Fed.App'x 634, 635 (9th Cir. 2011)(holding trial court could not alter TILA's procedural provisions where the plaintiff sent a notice of rescission within 3 days of closing, but lender ignored the notice and proceeded to fund the loan). Rescission in a contested case is effective only once the Court determines the right to rescind in the borrower's favor. *Yamamoto*, 329 F.3d at 1172 ("[I]t cannot be that the security interest vanishes immediately upon the giving of notice [of rescission]. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, . . . the security interested 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor."). The Court therefore can impose conditions on rescission to ensure that Plaintiffs' meet their obligations under the loan. *Id*. at 1173. If it is clear that the borrower lacks the capacity to pay back what is owed (less interest, finance charges, etc.), the Court can condition rescission on tender by the borrower of the outstanding loan amounts. *Id*. at 1171.

Based on *Yamamoto* and subsequent decisions, this Court joins the courts that have required borrowers to allege an ability to tender the principal balance of the subject loan in order

to state a claim for rescission under TILA. *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 901 (C.D.Cal. 2009)("By far, the majority of Courts to address the issue recently have required that borrowers allege an ability to tender the principal balance of the subject loan in order to state a claim for rescission under TILA."); *see also Hogan*, 441 Fed.App'x at 490 ("The district court properly dismissed appellants' TILA claim seeking rescission because appellants did not allege the ability to tender the proceeds of the loan."); *In re Gonzalez*, 2010 WL 6467623 *9 (9th Cir. BAP 2010)("In short, because he could not show the ability to tender, Debtor failed to state a [TILA rescission] claim against the lenders under Civil Rule 12(b)(6)."); *Long* , - - F.Supp.2d - -, 2012 WL 220791 at *9 ("In light of *Hogan*, the Court will join the district courts that require plaintiffs to plead that they are able to tender proceeds of the loan to state a TILA claim for rescission."); *Stewart v. Bank of New York Mellon*, 2010 WL 3789536 *4 (D.Ariz. September 22, 2010). Rescission is an empty remedy if the borrower cannot pay back what she has received. *Guerrero v. Citi Residential Lending, Inc.*, 2009 WL 9269973 *8 (E.D.Cal. 2009).

Although Plaintiffs acknowledge in the Proposed Second Amended Complaint an *obligation* to return the loan proceeds (Doc. 10-3, Proposed 2d. Am. Compl., Paragraph B of Count XII), they never allege the *ability* to return the loan proceeds.[8]  In fact, Plaintiffs specifically allege that they have no obligation to tender the loan proceeds to TCNB. (Id., Proposed Count XII Paragraphs 210 and B.)  Plaintiffs' failure to plead an ability to repay the outstanding loan principal, which exceeds $1.9 million, makes sense given the Court recently dissolved the state court injunction because Plaintiffs did not post additional bond in the amount of $81,670.  Presumably, if Plaintiffs were concerned about losing their home, they would have posted the additional bond money if they had the means to do so, even if they did not believe they were legally obligated to do so.

The Court finds that Plaintiffs have not alleged in the Proposed Second Amended Complaint an ability to tender the loan proceeds.[9]  Plaintiffs therefore cannot state a claim for

---

[8] Recognizing that you owe someone money is a far cry from being able to pay that person back.

[9] The Court does not believe Plaintiffs have alleged even an ability to repay the

rescission under TILA. Because Plaintiffs cannot state a claim for TILA rescission based on their proposed allegations, it would be futile to allow them to amend to add the proposed rescission claim against TCNB.

Because the Court finds that Plaintiffs' allegations in Counts XI, XII and XIII of the Proposed Second Amended Complaint fail to state a TILA claim for damages or rescission, the Court's April 4, 2012 futility ruling stands. (Doc. 47.) The Court therefore will deny the relief requested in Plaintiffs' Second Motion for Reconsideration.

## II. MOTION FOR INJUNCTIVE RELIEF

Plaintiffs filed an Emergency Motion for Issuance of a Temporary Restraining Order with Notice and Application for Preliminary Injunction (Doc. 75) on August 1, 2012 in an attempt to stop the Trustee Sale of their home noticed for August 13, 2012. To obtain preliminary injunctive relief, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even with the Ninth Circuit's slightly alternative standard, Plaintiffs still must show serious questions regarding the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)(quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

Plaintiffs argue in the Motion for a TRO that they are likely to succeed on the merits of their rescission claim because they have rescinded the loan transaction and thereby voided TCNB's security interest in their home and right to hold a Trustee Sale. (Doc. 75, pp.4-12.) Plaintiffs' entire argument for likelihood of success on the merits hinges on the viability of their TILA rescission claim against TCNB. But the Court has held again in this Order that Plaintiffs cannot state a TILA rescission claim against TCNB

---

remaining loan proceeds subject to an offset for damages caused by Bank of Elmwood. But, to the extent they have, those allegations would not be sufficient to state a claim for TILA rescission because the Court has found Plaintiffs cannot state a claim for damages against TCNB under any theory. Plaintiffs therefore would not be entitled to an offset from TCNB for any legal damages caused by Bank of Elmwood.

and has denied them leave to amend their complaint to add a TILA rescission claim against TCNB. Plaintiffs therefore have no likelihood of success on the merits of a TILA rescission claim.

Because Plaintiffs have no likelihood of success on the merits of their TILA rescission claim against TCNB — the only claim on which they rely in their current motion for injunctive relief — the Court will deny Plaintiffs' Emergency Motion for Issuance of a Temporary Restraining Order with Notice and Application for Preliminary Injunction (Doc. 75) and vacate the preliminary injunction hearing currently set for August 8, 2012.

Accordingly,

**IT IS HEREBY ORDERED** Granting Plaintiffs' Emergency Second Motion for Partial Reconsideration (Doc. 70) to provide the clarification outlined above, but Denying all relief requested in the Motion. The Court's earlier ruling regarding the futility of the proposed TILA claims against TCNB stands.

**IT IS FURTHER ORDERED** Denying Plaintiffs' Emergency Motion for Issuance of a Temporary Restraining Order with Notice and Application for Preliminary Injunction (Doc. 75) and vacating the preliminary injunction hearing currently set for 9:00 a.m. on Wednesday, August 8, 2012.

Dated this 6th day of August, 2012.

James A. Teilborg
United States District Judge