1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8    Michael and Jennifer Grady, husband and        No. CV-11-02060-PHX-JAT
9    wife,
                                                     **ORDER**
10                              Plaintiffs,

11   v.

12
     Federal Deposit Insurance Corporation as
13   Receiver for Bank of Elmwood, et al.;

14
                                Defendants.
15

16          Pending before the Court is sole remaining Defendant Jonathan Levin's Motion

17   for Summary Judgment.  (Doc. 165).  Plaintiffs have filed a Response (Doc. 171) and

18   Defendant has filed a Reply (Doc. 174).  The Court now rules on the motion.

19   **I.      BACKGROUND**

20          For purposes of the Court's resolution of the pending summary judgment motion,

21   the Court considers the relevant facts and background to be as follows.[1]

22          In July 2008, Plaintiffs Michael and Jennifer Grady had a $1.3 million dollar loan

23   with Washington Mutual secured by a first position deed of trust against Plaintiffs' home

24   and a $500,000 home equity line of credit ("HELOC") with CitiBank secured by a

25   second position deed of trust against Plaintiffs' home.  (Separate Statement of Facts in

26   Support of Levin's Motion for Summary Judgment ("DSOF"), Doc. 166 ¶¶ 1–2;

27   _____

28          [1] For purposes of Defendant's motion for summary judgment, the Court construes
     all disputed facts in the light most favorable to Plaintiffs.  *Ellison v. Robertson*, 357 F.3d
     1072, 1075 (9th Cir. 2004).

1   Plaintiff's Controverting and Supplemental Statement of Facts in Opposition to

2   Defendant's Motion for Summary Judgment ("PSOF"), Doc. 172 ¶ 5).

3        On approximately July 23, 2008, Plaintiffs approached Defendant Jonathan Levin,

4   an assistant vice president and loan officer for the Bank of Elmwood ("Bank"), seeking to

5   restructure their debt.  (PSOF ¶¶ 5–7).  Specifically, Plaintiffs sought to pay off their two

6   existing loans with a new loan for $1.7 to $1.8 million secured by a first position deed of

7   trust against Plaintiffs' home ("First Loan").  (*Id.* ¶ 7).  In conjunction with the first loan,

8   Plaintiffs sought either to have Citibank subordinate its HELOC to the First Loan, or,

9   alternatively, for the Bank to issue a new $500,000 HELOC secured by a second position

10  deed of trust against Plaintiffs' home ("Second Loan").  (*Id.*).  Plaintiffs specifically

11  explained to Defendant and the Bank that Plaintiffs did not desire the First Loan unless

12  they could also have the Second Loan (or have Citibank subordinate its HELOC to the

13  First Loan).  (*Id.* ¶ 3–4).  Plaintiffs worked with Defendant to achieve the desired

14  restructuring and supplied Defendant and the Bank with financial documentation for

15  underwriting purposes.  (DSOF ¶¶ 4–5; PSOF ¶¶ 5, 9, 13).

16       Unbeknownst to Plaintiffs, on August 21, 2008, Defendant and another

17  underwriter presented Plaintiffs' First and Second Loan applications to the Bank's three-

18  member loan committee.  (DSOF ¶ 6; PSOF ¶¶ 14–15).  The loan committee, of which

19  Defendant was not a member, reviewed Plaintiffs' applications, approved the First Loan,

20  and denied the Second Loan.  (DSOF ¶ 7; PSOF ¶¶ 18–19, 26–29).  On August 22, 2008,

21  Defendant contacted Plaintiffs by telephone, advised Plaintiffs that the First Loan had

22  been approved, and did not advise Plaintiffs that the Second Loan had been presented to

23  the loan committee, let alone denied.  (DSOF ¶ 7; PSOF ¶¶ 19–20).  Defendant also

24  orally told Plaintiffs that the Bank would work with Citibank to subordinate Citibank's

25  HELOC to the First Loan (or to have Citibank issue a "new" HELOC subordinate to the

26  First Loan).  (DSOF ¶ 8; PSOF ¶¶ 11, 21).

27       On September 2, 2008, Defendant contacted Plaintiffs by telephone and advised

28  Plaintiffs that Citibank would not agree to the proposed debt structure.  (DSOF ¶ 9; PSOF

¶ 22).  During that same phone call, Defendant orally promised Plaintiffs that the Bank would provide the Second Loan, along with the First Loan, subject only to the formality of Plaintiffs providing their 2007 tax returns to the Bank.  (DSOF ¶ 10; PSOF ¶ 22).  At no time did Defendant disclose to Plaintiffs that the Bank's loan committee had already denied Plaintiffs' application for the Second Loan.  (PSOF ¶¶ 24, 43–45).

Sometime later, Plaintiffs provided the Bank with their 2007 tax returns.  The Bank reviewed the tax returns, found that Plaintiffs income had decreased from 2006, and refused to provide the Second Loan to Plaintiffs.  (DSOF ¶¶ 11–13).  Subsequently, Plaintiffs filed this lawsuit to recover damages that they allegedly incurred relying on Defendant's alleged promise that the Bank would grant the Second Loan.  (Doc. 56; DSOF ¶ 14; PSOF ¶ 25).  Plaintiffs named numerous defendants in their Second Amended Complaint ("SAC") (Doc. 56), however, at this point in the litigation, for the purposes of liability, Defendant Jonathan Levin[2] is the sole remaining Defendant.  (*See* CM/ECF and the various Orders contained therein).  On May 10, 2013, Defendant filed the instant Motion for Summary Judgment (Doc. 165) on which the Court now rules.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* at 56(c)(1).  Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*

---

[2] Levin's wife also remains in the suit not for the purposes of liability, but rather for the purposes of collecting damages in the event that Plaintiffs receive a favorable judgment.

1    *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2        Initially, the movant bears the burden of pointing out to the Court the basis for the

3    motion and the elements of the causes of action upon which the non-movant will be

4    unable to establish a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to

5    the non-movant to establish the existence of material fact.  *Id.*  The non-movant "must do

6    more than simply show that there is some metaphysical doubt as to the material facts" by

7    "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' "

8    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting

9    Fed. R. Civ. P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the

10   evidence is such that a reasonable jury could return a verdict for the nonmoving party.

11   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare

12   assertions, standing alone, are insufficient to create a material issue of fact and defeat a

13   motion for summary judgment.  *Id.* at 247–48.  Further, because "[c]redibility

14   determinations, the weighing of the evidence, and the drawing of legitimate inferences

15   from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-

16   movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the

17   summary judgment stage.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

18   158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of

19   credibility, including questions of intent, should be left to the jury.") (internal citations

20   omitted).

21

22   **III.   ANALYSIS**

23       Plaintiffs' SAC presents six counts against the remaining Defendant: Count I

24   (Common-Law Fraud); Count II (Negligent Misrepresentation); Count III (Arizona

25   Consumer Fraud Under A.R.S. § 44-1521); Count VII (Negligence/Negligence *Per Se*);[3]

26   _____

27   [3] Count VII contains both state and federal allegations because Plaintiff alleges
     that Defendant is negligent *per se* under standards of care established by both state and
28   federal statutes and regulations: the Federal Truth in Lending Act ("TILA"), 15 U.S.C.
     §§ 1601, *et seq.*, Regulation Z of the Federal Reserve Board, 12 CFR §§ 226, *et seq.*, the
     Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*,

1    Count VIII (Negligence *Per Se* Based on Violations of Various Federal Statutes);[4] and

2    Count X (Aiding and Abetting the Violations in the Other Counts).  (Doc. 56; *see* Docs.

3    165, 171, 174).  For purposes of the legal arguments regarding the instant Motion for

4    Summary Judgment (Doc. 165), the Parties categorize the six remaining counts into two

5    groups: (1) Arizona state law tort-based claims (Counts I, II, III, VII, and X), and (2)

6    Federal statutory-based claims (Counts VII, VIII, and X).  (*See* Docs. 165, 171, 174).

7    The Court will consider each category in turn.

8        **A.    The Arizona State Law Tort-Based Claims (Counts I, II, III, VII, & X)**

9            In his Motion for Summary Judgment, Defendant does not argue that Plaintiffs are

10   unable to demonstrate a genuine dispute of material fact with regard to an element of any

11   of the five tort-based causes of action.  (*See* Docs. 165, 174).  Instead, Defendant's

12   motion operates similarly to a motion to dismiss in that Defendant generally argues that

13   Plaintiffs claims fail as a matter of law.  (*Id.*).  Specifically, Defendant argues (Doc. 165

14   at 4–12; Doc. 174 at 1–9) that all five of Plaintiffs' Arizona state law tort-based claims

15   are barred by Arizona's Statute of Frauds, A.R.S. § 44-101(9), because the five claims

16   are based on Defendant's oral promise regarding the grant of the Second Loan (a loan in

17   excess of $250,000).   Defendant also specifically argues (Doc. 165 at 12–13) that

18   Plaintiffs' Negligent Misrepresentation claim, Count II, fails as a matter of law because it

19   is based on a promise of future conduct.

20       **1.    The Arizona Statute of Frauds and Promissory Estoppel**

21           In Response to Defendant's statute of frauds defense, Plaintiffs vehemently

22   disagree with Defendant's characterization of Plaintiffs' claims as being based on an oral

23   promise (Doc. 171 at 2–3, 6–9).  Plaintiffs' argue that their claims do not seek damages

---

25   the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.*, as well as
26   "certain other federal and state statutes."  (SAC ¶¶ 168–69, 174).

27       [4] The Court notes that Count VIII is duplicative of Count VII.  Count VIII alleges
     only that Defendant's conduct constitutes negligence *per se* because it violates the
28   standard of care established by TILA, Regulation Z, and RESPA.  (SAC ¶¶ 180–83, 186).
     Each of these sources of a standard of care, however, is specifically included in Count
     VII.  (SAC ¶ 168).

1    from the denial of the Second Loan, but rather from Defendant's failure to disclose that

2    the Second Loan had been denied prior to the execution of the First Loan.  (*Id.* at 6).

3    Thus, Plaintiff claims that Defendant's statute of frauds defense is inapplicable and

4    "irrelevant."  (*Id.* at 7–9).   Nonetheless, Plaintiffs alternatively argue that even if the

5    statue of frauds was relevant here, Defendant's actions are still actionable for three

6    reasons: (1) Defendant's oral promise was made without an intention to perform it (*id.* at

7    9–11); (2) the statue of frauds does not apply to this loan because the loan was for

8    "personal, family, or household purposes" (*id.* at 11–12 (quoting A.R.S. § 44-101(9));

9    and (3) promissory estoppel bars Defendant's assertion of a statute of frauds defense (*id.*

10   at 12–14).

11        With regards to promissory estoppel, "[p]romissory estoppel, if enforced against

12   Defendant, is an exception to the statute of frauds in certain circumstances." *Quintana v.*

13   *Bank of Am.*, No. CV 11-2301-PHX-JAT, 2014 WL 690906, at *6 (D. Ariz. Feb. 24,

14   2014).  To state a claim for promissory estoppel, Plaintiffs must show that: (1) Defendant

15   made a promise to Plaintiffs; (2) Defendant should have reasonably foreseen that

16   Plaintiffs would rely on that promise; (3) Plaintiffs actually relied on that promise to their

17   detriment; and (4) Plaintiffs' reliance on the promise was justified.  *Higginbottom v.*

18   *State*, 51 P.3d 972, 977, ¶ 18 (Ariz. Ct. App. 2002).  Arizona law, however, "precludes

19   the defense of the Statute of Frauds only when there has been: (1) a misrepresentation

20   that the Statute of Frauds's requirements have been met, or (2) a promise to put the

21   agreement in writing." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d

22   1013, 1024 (D. Ariz. 2003) (citing *Mullins v. S. Pac. Transp. Co.*, 851 P.2d 839, 841

23   (Ariz. Ct. App. 1992); *see also* 3 *Corbin on Contracts* § 8.12 at 70 (rev. ed. 1997) ("[t]he

24   Grand Canyon State's reservation about applying the promissory estoppel doctrine too

25   liberally can also be seen regarding the statute of frauds. Before promissory estoppel can

26   . . . vitiate the statute of frauds, Arizona courts circumspectly require reliance upon a

27   second promise").

28        Here, it is undisputed that Plaintiffs allege that Defendant orally promised to grant

1    the Second Loan to Plaintiffs.  (DSOF ¶ 10).  Although such an oral promise is typically
2    barred by the Statute of Frauds, it is undisputed that Defendant's alleged oral promise
3    included a promise to reduce the loan to writing.  (*See* DSOF ¶ 10 (admitting that the
4    Second Loan would be "secured by a second deed of trust"); *see also* PSOF ¶¶ 2–4, 7,
5    22–24 (indicating that the First and Second Loans were related, the Parties "closed" on
6    the First Loan in writing, and Plaintiffs anticipated "closing" on the Second Loan)).  The
7    alleged promise that the Second Loan would be reduced to writing ("closed" and secured
8    by a deed of trust) would satisfy the Statute of Frauds's second promise requirement.  *See*
9    *Schrock v. Fed. Nat'l Mortg. Ass'n*, No. CV 11-0567-PHX-JAT, 2011 WL 3348227,
10   at *7 (D. Ariz. Aug. 3, 2011) (holding that in the context of a tort action for "wrongful
11   foreclosure," an alleged promise to reduce a loan modification agreement to writing
12   vitiates the Statute of Frauds).  Furthermore, Defendant admits that Plaintiffs allege all
13   four elements of promissory estoppel.[5]  (DSOF ¶¶ 10, 14, 18; *see* PSOF ¶¶ 3–4, 7, 11–12,
14   14, 16–17, 22–24, 39–42).  Critically, in his Motion for Summary Judgment, Defendant
15   does not argue that Plaintiffs cannot demonstrate a genuine dispute of material fact
16   regarding their allegations.  (*See* Docs. 165, 174).  Consequently, the Court finds that, on
17   this record, there exists a genuine dispute of material fact over whether promissory
18   estoppel vitiates Defendant's Statute of Frauds defense and, therefore, Defendant is not
19   entitled to summary judgment on his Statute of Frauds defense.[6]

20          Accordingly, with respect to Counts I, II, III, VII, and X, the Court denies
21   Defendants motion for summary judgment on Statute of Frauds grounds.

22

23   _____

24          [5] (1) Defendant made a promise to Plaintiffs; (2) Defendant should have
     reasonably foreseen that Plaintiffs would rely on that promise; (3) Plaintiffs actually
25   relied on that promise to their detriment; and (4) Plaintiffs' reliance on the promise was
     justified.  *Higginbottom*, 51 P.3d at 977, ¶ 18.

26          [6] The Court notes that if, through the doctrine of promissory estoppel, the Statute
27   of Frauds is unavailable to Defendant as a defense to the five Arizona state law tort-based
     claims, then it is irrelevant whether or not the five claims are based on Defendant's
28   alleged oral promise, Defendant's alleged misrepresentation, or some combination of
     both.  Consequently, the Court takes no position on the merits of the Parties' alternative
     arguments regarding the applicability of the Statute of Frauds.

2.        **Negligent Misrepresentation (Count II)**

Defendant argues (Doc. 165 at 12–13) that Plaintiffs' Negligent Misrepresentation claim, Count II, fails as a matter of law because it is based on a promise of future conduct.   In Arizona, "[n]egligent misrepresentation requires a misrepresentation or omission of a fact.   A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation."   *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992).   In *McAlister*, the Arizona Court of Appeals affirmed a trial court's dismissal of a plaintiff's negligent misrepresentation when *every* allegation related to negligent misrepresentation related to a future event.   *Id.* at 1261, n.4.   Here, however, Plaintiffs' allegations include not only future conduct (i.e. the alleged promise to make the Second Loan), but also misrepresentations and omissions of current facts (e.g. the alleged failure to disclose that the Second Loan had already been denied). (Doc. 56 ¶ 124; PSOF ¶¶ 15–19, 43, 45).   Thus, Plaintiffs' negligent misrepresentation claim is not solely predicated on future conduct and, therefore, does not fail as a matter of law.   Moreover, upon review of the evidence in the record, and in light of Defendant's lack of argument to the contrary, the Court finds that there exists a genuine dispute of material fact over whether Defendant either misrepresented or omitted a current fact. Accordingly, the Court denies Defendant's motion for summary judgment with respect to Count II.

B.        **The Federal Law Statutory-Based Claims (Counts VII, VIII, & X)**

In his Motion for Summary Judgment, Defendant argues that Plaintiffs' federal law statutory-based claims (Counts VII, VIII, and X) fail as a matter of law for two reasons: (1) Plaintiffs' negligence *per se* claims (Counts VII and VIII) based on TILA,[7] RESPA,[8] and ECOA[9] fail because those statutes do not apply to Defendant, and

---

[7] The Federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.* (implemented by Regulation Z of the Federal Reserve Board, 12 CFR §§ 226, *et seq.*).

[8] The Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*

[9] The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.*

1    (2) Plaintiffs' aiding and abetting claims (Count X) based on TILA, RESPA, and ECOA

2    do not permit secondary liability.  (Doc. 165 at 13–17; Doc. 174 at 9–11).

3                **1.    The Applicability of the Federal Statutes to Defendant**

4                With regard to Plaintiffs' claims for negligence *per se* (Counts VII and VIII),

5    Defendant specifically challenges the applicability of TILA, RESPA, and ECOA to his

6    alleged conduct in this case.  (Doc. 165 at 13–17; Doc. 174 at 9–11).  In Response,

7    Plaintiffs explain that their references to "negligence *per se*" refer merely to the

8    evidentiary standard for negligence, and "is not actually a separate independent theory or

9    claim."  (Doc. 171 at 14).  Nonetheless, Plaintiffs later incongruously describe Plaintiffs'

10   references to TILA and RESPA as "claims" (*id.* at 14) and argue at length that Plaintiffs

11   maintain a viable claim against Defendant "for violations of ECOA."   (*Id.* at 15–17

12   (citing only to Count VII, Negligence/Negligence *Per Se*, of the SAC)).   Taking into

13   account Plaintiffs' inconsistent positions regarding the nature of their claims and

14   Defendant's motion for a judgment as a matter of law that TILA, RESPA, and ECOA do

15   not apply to Defendant, the Court considers the applicability of each of the three

16   specified Federal statutes.

17               Initially, the Court notes that Plaintiffs concede that the undisputed facts

18   demonstrate that TILA and RESPA do not directly apply to Defendant in this case.  (Doc.

19   171 at 14–15 ("With regards to Plaintiffs['] TILA and RESPA claims, . . . Defendant . . .

20   may have no direct liability to Plaintiffs relative thereto.")).   With regard to ECOA,

21   ECOA regulates only the activities of "creditors."   15 U.S.C. § 1691.   "Creditors" is

22   defined as "any person who regularly extends, renews, or continues credit; any person

23   who regularly arranges for the extension, renewal, or continuation of credit; or any

24   assignee of an original creditor who participates in the decision to extend, renew, or

25   continue credit."   *Id.* § 1691a.  The Federal Reserve Board, in implementing ECOA,

26   further explained that "[c]reditor means a person who, in the ordinary course of business,

27   regularly participates in a credit decision, including setting the terms of the credit.  The

28   term creditor includes a creditor's assignee, transferee, or subrogee who so participates."

1    12 CFR § 202.2(l).

2         Here, without citation to the record, Plaintiff argues that Defendant is a "creditor"

3    as defined in the statute because Defendant, "as a loan officer of the [B]ank, . . . regularly

4    participated in credit decisions.  Indeed, he directly participated in the loan committee

5    meeting at which [Plaintiffs'] second loan application was denied . . . , and was the

6    individual responsible for reporting the results of the loan committee decision to

7    Plaintiffs."  (Doc. 171 at 16).  However, it is undisputed that that Defendant was not a

8    member of the Bank's loan committee, the entity that reviewed and denied Plaintiffs'

9    loan application.  (PSOF ¶¶ 14–15, 26–27).  Although it is undisputed that Defendant,

10   along with an underwriter, presented Plaintiffs' loan application to the Bank's loan

11   committee, Plaintiffs point to no evidence suggesting that Defendant participated in the

12   credit discussions, advised the loan committee on the terms of the credit, had any say in

13   the loan committee's credit decision, or was otherwise involved in the loan committee's

14   credit decision.  Thus, Plaintiff has not demonstrated a genuine dispute of material fact

15   that Defendant participated in the instant credit decision[10] and, therefore, was a

16   "creditor."[11]

17        In sum, the Court finds that Plaintiff has not demonstrated a genuine dispute of

18   material fact that TILA, RESPA, or ECOA apply to Defendant or Defendant's alleged

19   conduct.  Accordingly, the Court grants Defendant's motion for summary judgment with

20   respect to any negligence *per se* or independently based claims against Defendant under

21

22   _____

23        [10]  Additionally, Plaintiffs point to no evidence suggesting that, aside from
     Plaintiffs' allegations related to the instant credit decision, Defendant, "in the ordinary
24   course of business, regularly participates in a credit decision, including setting the terms
     of the credit."  12 CFR § 202.2(l).
25

26        [11]  At best, the summary judgment record suggests that Defendant, as a loan officer
     of the Bank, was "a person who, in the ordinary course of business, regularly refers
27   applicants or prospective applicants to creditors" (the Bank's loan committee).  12 CFR
     § 202.2(l).  This expanded definition of "creditor," however, applies only where there are
28   allegations of discrimination or discouragement.  *Id.* §§ 202.4(a)–(b).  Because Plaintiffs'
     allegations do not include discrimination or discouragement (*see* Doc. 56), the Court
     applies only the narrow definition of "creditor."

TILA, RESPA, or ECOA that Plaintiffs make in Counts VII or VIII.[12]

**2.      The Availability of Aiding and Abetting Under the Federal Statutes**

With regard to Plaintiffs' aiding and abetting claims (Count X), Defendant specifically challenges whether TILA, RESPA, and ECOA permit secondary liability for violations of the three Federal statutes and their related regulations.  (Doc. 165 at 13–17; Doc. 174 at 9–11).  In Response, Plaintiffs argue only that "Arizona recognizes the tort of aiding and abetting, . . . specifically that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person."  (Doc. 171 at 15).  "It is Plaintiffs['] contention that various provisions of TILA and RESPA [and ECOA] establish a duty of care which [nonparties] breached and that Defendant['s]" conduct in this case aided and abetted that breach.  (*Id.*).  Even if Plaintiff could prove its allegations, if TILA, RESPA, and ECOA do not permit secondary liability, then it is immaterial whether or not Defendant knew of and assisted in nonparties' alleged violations of the statutes.[13]  Thus, the Court considers whether TILA, RESPA, or ECOA provide for secondary liability.

With regard to TILA, TILA provides that "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person."  15 U.S.C. § 1640(a).

> TILA creates a duty to disclose certain information only on behalf of "creditors" as that term is defined in TILA.  *See* 15 U.S.C. § 1631(a)–(b) (2003).  Creditors, in turn, are liable

---

[12] To the extent that Count VII contains a theory of Defendant's duty and breach of that duty distinct from a violation of TILA, RESPA, or ECOA, the Court makes no judgment regarding the remaining merits of Counts VII.  Count VIII, however, alleges a duty and breach based solely on TILA and RESPA (Regulation Z, 12 CFR § 226, *et seq.*, implements TILA).  Consequently, the Court's finding that neither TILA nor RESPA apply to Defendant entitles Defendant to summary judgment on the entirety of Count VIII.

[13] Indeed, if TILA, RESPA, and ECOA do not provide for secondary liability, then the only relevant question regarding TILA, RESPA, and ECOA is whether Plaintiff can prove that Defendant is *directly* liable to Plaintiff for Defendant's own violations of the statutes.  However, as discussed above, *supra* Part III.B.1, in this case, TILA, RESPA, and ECOA neither provide a cause of action against Defendant nor evidence Defendant's duty or breach of that duty.

> for violations of that duty only to the individuals or entities to whom they owe that duty. *See* 15 U.S.C. § 1640(a). TILA does not extend that duty or the benefits of that duty to anyone else.

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 431 (S.D.N.Y. 2003). "Thus, based on the plain language of the statute there is no claim for conspiracy or aiding and abetting under TILA." *Id.*; *see Enriquez v. J.P. Morgan Chase Bank, N.A.*, No. 08-CV-1422-RCJ-LRL, 2009 WL 160245, at *2 (D. Nev. Jan. 22, 2009) (citing *In re Currency Conversion*, 265 F. Supp. 2d at 431, for the proposition that "TILA does not permit conspiracy or aiding and abetting actions because the statute does not 'extend [a creditor's disclosure] duty or the benefits of that duty to anyone else' "). Moreover, "[n]othing in either TILA's text or legislative history supports a claim for aiding and abetting or conspiracy." *In re Currency Conversion*, 265 F. Supp. 2d at 433. Accordingly, Plaintiffs' allegations that nonparties' violated TILA cannot support Plaintiffs' aiding and abetting claim against Defendant. *Id.*; *see Abel v. KeyBank USA, N.A.*, No. 03-CV-524, 2003 WL 26132935, at *14 (N.D. Ohio Sept. 24, 2003) (holding that an alleged violation of TILA "cannot form the basis of plaintiffs' civil conspiracy claim"); *see also Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098–99 (N.D. Cal. 2008) (holding that where plaintiffs alleged violations of both TILA and a California consumer protection law, plaintiffs' aiding and abetting claim could proceed because TILA did not preempt the California law on which the aiding and abetting claim was premised).

With regard to RESPA and ECOA, they, too, do not provide for secondary liability. The text of neither statute includes any provision for "aiding and abetting" or "conspiracy." *See* RESPA, 12 U.S.C. §§ 2601, *et seq.*; ECOA, 15 U.S.C. §§ 1691, *et seq.*

> As the Supreme Court explained in *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, if Congress intended to impose secondary liability by targeting aiding and abetting action, it certainly knows how to do it. 511 U.S. 164, 177 (1994) ("If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.").

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006).  Consequently, courts may not read a cause of action for secondary liability into the language of a federal statute that is silent on the issue because doing so would "extend liability beyond the scope of conduct prohibited by the statutory text."  *Central Bank of Denver*, 511 U.S. at 177; *see Freeman*, 457 F.3d at 1006 ("When a statute is precise about who . . . can be liable courts should not implicitly read secondary liability into the statute.") (internal quotation omitted).  Because RESPA and ECOA's statutory text does not provide for secondary liability, claims for aiding and abetting cannot stand.  Accordingly, the Court grants Defendant's motion for summary judgment with respect to any claims that Defendant aided and abetted violations of TILA, RESPA, or ECOA that Plaintiffs make in Count X.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant Jonathan Levin's Motion for Summary Judgment (Doc. 165) is DENIED in part and GRANTED in part, consistent with the reasoning set out above.

**IT IS FURTHER ORDERED** that the Federal law statutory-based claims against Defendant related to TILA, RESPA, and ECOA in Counts VII, VIII, and X are dismissed with prejudice, consistent with this Order.

Dated this 26th day of March, 2014.

James A. Teilborg
Senior United States District Judge