**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Grady; Jennifer Grady, <br><br> Plaintiffs, <br><br> v. <br><br> Bank of Elmwood; Elmwood Financial Corporation; Jonathan Levin; Sarah Levin, <br><br> Defendants. <br> _____ <br> Tri City National Bank, <br> Counterclaimant, <br> v. <br><br> Michael Grady; Jennifer Grady, <br><br> Counterdefendants. <br> _____ <br> The Federal Deposit Insurance Corporation as Receiver for Bank of Elmwood, <br><br> Intervenor. | No. CV-11-02060-PHX-JAT <br><br> **ORDER** |

Pending before the Court is Counterclaimant Tri City National Bank's ("TCNB") Renewed Motion to Exonerate the Bond ("Motion to Exonerate"). (Doc. 176). Plaintiffs filed an Opposition to TCNB's Motion to Exonerate and a Countermotion to Exonerate the Bond to Plaintiffs ("Countermotion"). (Doc. 179). The Motions are fully-briefed (*see*

Docs. 176, 179) and the Court held oral arguments on June 26, 2014. For the following reasons, the Court denies TCNB's Motion to Exonerate (Doc. 176) and grants Plaintiffs' Countermotion (Doc. 179).

## I. BACKGROUND

In September 2008, Plaintiffs signed a promissory note and deed of trust (collectively, the "Note") securing their single, one-family dwelling on less than 2.5 acres ("Property") with Bank of Elmwood ("BOE") as the Lender. (Doc. 10-1 at 12). The deed of trust secured a promissory note of just over $1,800,000. (*Id.*). In July 2009, Plaintiffs filed this lawsuit seeking to have the Note voided for fraud. (*See* Doc. 22 at 3).

On October 8, 2009, Plaintiffs obtained a preliminary injunction from the Maricopa County Superior Court ("Superior Court") barring BOE from foreclosing on the Note. (*Id.* at 4). Pursuant to Rule 65(e), Ariz. R. Civ. P., the Superior Court ordered Plaintiffs to post a cash bond as security in the amount of $165,000.00 to maintain the preliminary injunction. (Doc. 176-1 at 3). The Superior Court calculated this bond amount by adding the mortgage payments due at the time (11 months at $9,100.00 per month) and "an additional four months into the future plus costs of $28,500.00." (*Id.*). The Superior Court also noted that "[a]ny award of attorney's fees will abide trial on the merits of this case." (*Id.* at 4). Plaintiffs posted the bond in full. (Doc. 176 at 2).

On October 23, 2009, the State of Wisconsin Department of Financial Institutions closed BOE and caused the Federal Deposit Insurance Corporation ("FDIC") to be appointed as the receiver. (Doc. 12 at 2). That same day, the FDIC sold all of BOE's assets to TCNB, including Plaintiffs' Note. (*Id.*). In May 2010, TCNB intervened in this matter.[1] (*Id.*; Doc. 10-3 at 4).

---

[1] TCNB intervened as to count ten of Plaintiffs' First Amended Complaint regarding violations of the Truth-in-Lending Act ("TILA") and violations of the Real Estate Settlement Procedures Act, to the extent that those claims pertain to the loan TCNB purchased. (Doc. 12 at 2). TCNB also intervened as to count eleven of Plaintiffs' First Amended Complaint for a preliminary injunction to prevent foreclosure of the Property due to Plaintiffs' default on the Note now owned by TCNB. (*Id.* at 3).

1    In June 2010, the Superior Court granted TCNB's motion to modify the preliminary injunction and increased the bond proceeds by $103,330.00. (Doc. 176-1 at 7). To calculate the increase in bond proceeds, the Superior Court added additional payments on the note at $9,100.00 per month from April 1, 2010 through December 31, 2010 and property taxes due of $21,430.00. (*Id.*). Plaintiffs posted this additional amount raising the total bond proceeds to $268,330.00 (collectively, the "Bond"). (Doc. 176 at 2).

On July 7, 2010, the Superior Court granted the FDIC's motion to be substituted in place of BOE for counts one through ten and count twelve of Plaintiffs' First Amended Complaint. (Doc. 12 at 3). On August 5, 2010, the FDIC removed the suit to this Court. (*Id.*). On October 13, 2010, because all claims against the FDIC must be addressed in an administrative proceeding, Plaintiffs agreed to dismiss the FDIC. (Doc. 12-1 at 10). On December 7, 2010, the Court remanded the case back to the Superior Court. (Doc. 12 at 4). At that time, the Superior Court granted TCNB's motion to modify the preliminary injunction by increasing the bond amount by $81,670.00 in order to cover mortgage payments that would be due through July 31, 2011 in addition to an amount for TCNB's ongoing attorneys' fees. (Doc. 176-1 at 11). Plaintiffs failed to post the bond amount by the required date. (Doc. 179 at 2). As a result, the current Bond proceeds total $268,330.00 in compliance with the initial two Superior Court Orders (collectively, the "Orders"). (Doc. 183 at 2).

In Superior Court, on June 22, 2011, Plaintiffs filed a motion to amend the complaint seeking, among other things, to add TCNB as a defendant to claims previously dismissed against the FDIC. (*See* Doc. 10-3). On July 22, 2011, the FDIC filed a motion to intervene arguing that Plaintiffs could only assert those claims against the FDIC. (*Id.*). On October 5, 2011, the Superior Court granted the FDIC's motion to intervene and, on October 20, 2011, the FDIC removed the case to this Court for the second time, now asserting original federal jurisdiction under 12 U.S.C. §1819(b)(2)(A). (*See id.*).

On April 4, 2012, the Court granted TCNB's motion to dissolve the preliminary injunction because of Plaintiffs' failure to post the security required by the Superior

Court's third order. (*See* Doc. 48). However, the Court declined to release the Bond to TCNB. (*Id.* at 6). At that time, the Court could not conclude that TCNB had been wrongfully enjoined because TCNB purchased the loan with the injunction already in place and no decision had been reached on the merits as to whether BOE or TCNB ever had the right to conduct a trustee's sale. (*Id.*).

On October 25, 2012, TCNB held the trustee's sale for the Property in which TCNB submitted a "credit bid" [2] of $1,900,000.00 and became the legal owner of the Property. (*See* Doc. 179-1). TCNB's successful credit bid extinguished Plaintiffs' debt under the Note. (Doc. 180 at 3). On December 14, 2012, the Court dismissed all claims against TCNB and dismissed TCNB as a Defendant. (*See* Doc. 122). TCNB now asks the Court to exonerate the Bond posted by Plaintiffs and distribute the Bond's proceeds to TCNB. (Doc. 176). Plaintiffs conversely ask the Court to deny TCNB's Motion to Exonerate and instead exonerate the Bond posted by Plaintiffs and distribute the Bond's proceeds to Plaintiffs. (Doc. 179).

## II.     LEGAL STANDARD

When a court issues a preliminary injunction, the court must also require that the movant post a bond that can be used "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *accord* Ariz. R. Civ. P. 65(e). A wrongfully-enjoined party is presumptively entitled to recovery on the injunction bond. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). "A party is wrongfully enjoined when it had the right all along to do what it was enjoined from doing." *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003) (citing *Nintendo*, 16 F.3d at 1036). While damages as a result of a wrongful injunction of a trustee's sale are assumed, a defendant is only entitled to recover "provable" damages. *Geddes v. HSBC Bank*, No. CV-12-0667-

---

[2] A "credit bid" refers to the privilege of a secured creditor to bid its own debt at a trustee's sale and purchase the collateral itself. Charles J. Tabb, *Credit Bidding, Security, and the Obsolescence of Chapter 11*, 2013 U. Ill. L. Rev. 103, 109 (2013).

- 4 -

PHX-FJM, 2012 WL 4120495, at *1 (D. Ariz. Sept. 18, 2012) (citing *Fidelity Nat'l Fin. Inc. v. Friedman*, 472 F. App'x 577, 579 (9th Cir. 2012)).

## III. ANALYSIS

### A. Effect of A.R.S. § 33-814(G) on TCNB's Recovery of the Bond

Plaintiffs initially argue that Arizona's anti-deficiency statute, Arizona Revised Statute ("A.R.S.") § 33-814(G), completely bars TCNB's recovery of the Bond. (Doc. 179 at 3). That statute provides:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of indebtedness and any interest, costs and expenses.

A.R.S. § 33-814(G) (2013).

A.R.S. § 33-814(G) is often referred to as the "anti-deficiency statute." *Long v. Corbet*, 888 P.2d 1340, 1342 (Ariz. Ct. App. 1994). The purpose of the statute is to "protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price." *Baker v. Gardner*, 770 P.2d 766, 769 (Ariz. 1988). A bond required for a preliminary injunction, on the other hand, serves the purpose of paying "the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *accord* Ariz. R. Civ. P. 65(e).

Although the Property meets the required specifications of A.R.S. § 33-814 (s*ee* Doc. 179 at 3), that statute does not apply because Defendant's motion does not seek the balance of debt owed on the Property after the trustee's sale. (Doc. 180 at 3). A.R.S. § 33-814(G) would prevent TCNB from seeking the balance of debt owed on the Property after the trustee's sale of the Property, *Baker*, 770 P.2d at 769, but TCNB may incur costs and damages by wrongful enjoinment which are distinct from the balance of debt and likely differ from this amount. *See, e.g., Sionix*, 299 F. Supp. 2d at 1086 ("[d]amages on an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself"). As a result, A.R.S. § 33-814(G) does not

completely bar exoneration of a bond's proceeds to a party wrongfully enjoined by a preliminary injunction.

### B. Wrongful Enjoinment of TCNB

In April 2012, the Court dissolved the preliminary injunction preventing the non-judicial foreclosure of Plaintiffs' Property. (Doc. 48 at 6). At that time, the Court denied TCNB's motion to exonerate the Bond pending a decision on the merits as to whether TCNB had been wrongfully enjoined from pursuing a trustee's sale. (*Id.*). In December 2012, the Court reached a decision on the merits by dismissing all claims against TCNB because BOE and TCNB were not the same party. (Doc. 122 at 2). TCNB had the right to conduct a trustee's sale for the Property all along, and, therefore, the preliminary injunction wrongfully enjoined TCNB from pursuing a trustee's sale. Because TCNB was wrongfully enjoined, TCNB may be entitled to recover "provable damages up to the amount of the bond." *Nintendo*, 16 F.3d at 1036 (9th Cir. 1994).

### C. Damages for Wrongful Enjoinment

TCNB claims its damages due to wrongful enjoinment are comprised of "payments on the Note . . . from the time TCNB owned the Note through the date the injunction was dissolved, as well as the attorneys' fees TCNB incurred in seeking to conduct the [t]rustee's [s]ale and have the Court find Plaintiffs' claims were futile." (Doc. 180 at 5). TCNB also claims damages in unpaid real estate taxes prior to the trustee's sale. (Doc. 176 at 5). Plaintiff responds that the Full Credit Bid Rule precludes TCNB's recovery of damages related to Plaintiffs' debt obligation and foreclosure expenses. (Doc. 181 at 4). Additionally, Plaintiff argues that the terms of the Orders setting the Bond bar attorneys' fees. (*Id.*).

#### 1. Application of the Full Credit Bid Rule

First, Plaintiffs argue that the Full Credit Bid Rule bars TCNB from recovering damages related to Plaintiffs' unpaid monthly mortgage payments and real estate taxes.

A full-credit bid is a bid in which the "beneficiary on a deed of trust 'purchases' the property at a deed of trust sale by bidding at least the full amount owed on the debt

and crediting the debt towards the sale purchase price." *ING Bank, FSB v. Mata*, No. CV-09-748-PHX-GMS, 2009 WL 4672797, at *2 n.2 (D. Ariz. Dec. 3, 2009). When the lender makes a full-credit bid, the State of Arizona follows the Full Credit Bid Rule. *M&I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 867 (D. Ariz. 2011) (stating that the rule is implicit in *Nussbaumer v. Superior Court*, 489 P.2d 843 (Ariz. 1971)). Under the Full Credit Bid Rule, the market value of the property is said to be the price obtained at the foreclosure sale. *Id.* In *333 W. Thomas Med. Bldg. Enters. v. Soetanyo*, the District Court of Arizona found that, as a matter of law, there were no damages in an action for waste brought under a deed of trust because of the Full Credit Bid Rule. 976 F. Supp. 1298, 1300 (D. Ariz. 1995). In that case, the court calculated damages as the amount which the value of the security is less than the outstanding indebtedness. *Id.* at 1301. The court recognized that because the lender made a "full credit bid," the lender could not show any impairment to the security and, thus, suffered no damages resulting from the loan. *Id.*

Here, TCNB claims wrongful enjoinment led to damages comprised of "the payments on the Note not being made by Plaintiffs from the time TCNB owned the Note through the date the injunction was dissolved" (Doc. 180 at 5) and unpaid real estate taxes (Doc. 176 at 5). The Trustee's Deed Upon Sale issued to TCNB on October 25, 2012 states that "grantee being the highest bidder at such sale, became the purchaser of said property and made payment therefore to said Trustee on the amount bid, namely $1,900,000.00." (Doc. 181-3 at 1). TCNB acknowledges that this bid extinguished Plaintiffs' debt under the note (Doc. 180 at 3) and, thus, the bid was a "full credit bid" for the Property.

Here, TCNB's credit bid constitutes actual payment to TCNB to the same extent that a cash bid and payment by Plaintiffs to TCNB would be an actual payment. *M&I Bank,* 805 F. Supp. 2d at 868 ("A beneficiary who bids high, drives out other bidders, and takes the property for the amount of its bid may not then say it was not really paid because it paid itself too much."). By making a "full credit bid," TCNB extinguished its damages resulting from Plaintiffs' debt obligations including the monthly mortgage

- 7 -

1 payments and real estate taxes related thereto. Thus, having been wrongfully enjoined, TCNB cannot be entitled to the mortgage payments and real estate taxes previously secured by the Bond. Accordingly, the Court denies TCNB's Motion to Exonerate the Bond with respect to the past mortgage payments and real estate taxes.

### 2. Attorneys' Fees

Second, TCNB argues that attorneys' fees related to dissolving the preliminary injunction should be calculated within the damages protected by the Bond. (Doc. 176 at 6).

Liability of a posted bond is "limited by the terms of the bond or the order of the court that required the posting." *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1168 (9th Cir. 1976). The Arizona Supreme Court has recognized that a court order pursuant to Rule 65(e), Ariz. R. Civ. P., implicitly includes attorneys' fees as a recoverable damage from a bond. *U.S. Fid. & Guar. Co. v. Frohmiller,* 227 P.2d 1007, 1009–10 (Ariz. 1951) (noting that Arizona allows recovery of attorneys' fees from a bond because preliminary injunctions are "provisional or extraordinary remedies, ancillary to the main purpose of the suit"); *see also Mason Dry Goods Co. v. Ackel*, 243 P. 606, 612 (Ariz. 1926) ("Reasonable attorneys' fees incurred in procuring the dissolution of an injunction are proper elements of damages in a suit on the bond.").

While the preliminary injunction and related bond were ordered pursuant to Rule 65(e), Ariz. R. Civ. P., the first Superior Court Order explicitly overrode any implication that the bond would cover attorneys' fees by noting that "[a]ny award of attorneys' fees will abide trial on the merits of this case." (Doc. 176-1 at 3). Furthermore, by explicitly including attorneys' fees in the second modification of the Bond (which was not posted and therefore not at issue here), the Superior Court likely did not intend to protect damages for attorneys' fees through the Bond's proceeds in the initial two Orders. (*See id.* at 11). Because the Superior Court's Orders to post the Bond explicitly modified terms that would have allowed collection of attorneys' fees as damages from wrongful enjoinment, the Court finds that attorneys' fees are not part of the damages TCNB may

recover from the Bond.[3] Accordingly, the Court denies TCNB's Motion to Exonerate the Bond with respect to TCNB's claimed attorneys' fees.

### 3. Plaintiffs' Countermotion

Plaintiffs claim that their Countermotion to Exonerate the Bond should be granted as "Plaintiffs are the only party entitled to the Bond." (Doc. 179 at 4). As the Full Credit Bid Rule bars TCNB's claims for mortgage payments and real estate taxes and the terms of the Bond's Orders prohibit TCNB's claims for attorneys' fees, TCNB seeks no viable damages for wrongful enjoinment. The Court also notes there are no other pending claims between Plaintiffs and TCNB. As a result, the Court sees no just reason to continue to hold the Bond and grants Plaintiffs' Countermotion to exonerate the Bond and release the Bond proceeds in the amount of $268,330.00 [4] to Plaintiffs.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Tri City National Bank's Motion to Exonerate (Doc. 176) is **DENIED.**

**IT IS FURTHER ORDERED** that Michael and Jennifer Grady's Countermotion to Exonerate the Bond (Doc. 179) is **GRANTED** as follows: the Bond in the amount of $268,330.00 is released to the Gradys (to be sent to their counsel).

Dated this 30th day of June, 2014.

James A. Teilborg
Senior United States District Judge

---

[3] Additionally, the Court notes that this decision is consistent with decisions under Rule 65(c), Fed. R. Civ. P., because Rule 65(c) would not allow a calculation of attorneys' fees within damages protected by the Bond. *Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ("Attorney's fees are not recoverable as damages in an action on an injunction bond."); *see also Heiser v. Woodruff*, 128 F.2d 178, 180 (10th Cir. 1942) ("And the United States Courts have consistently held that attorney's fees are not an element of damages recoverable upon such a bond [issued under Fed. R. Civ. P. 65(c)].").

[4] Transferred to this Court by Order dated March 25, 2014. (Doc. 183).