WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Grady, et al., | No. CV-11-02060-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Federal Deposit Insurance Corporation, et al., | |
| Defendants. | |

Pending before the Court is third-party Tri City National Bank's (TCNB) Motion for Reconsideration pursuant to LRCiv 7.2(g) (Doc. 206) of the Court's June 30, 2014 Order (Doc. 199) exonerating the Bond[1] in favor of Plaintiffs, Michael and Jennifer Grady. Additionally, at the Court's request[2] (Doc. 207), TCNB filed a Supplemental

---

[1] Originally ordered by the Maricopa County Superior Court in two separate bond orders (collectively, the "Bond"), Plaintiff posted a total amount of $268,330.00. (June 30, 2014 Order, Doc. 199 at 2–3). By the Bond's explicit terms, this amount consisted of $218,400.00 in missed mortgage payments (24 months multiplied by $9,100.00 per month), $28,500.00 in costs, and $21,430.00 in due property taxes. (*Id.*). Also by the Bond's explicit terms, the Bond did not include a provision for TCNB's attorneys' fees. (*Id.* at 8–9).

[2] In a text-only Order (Doc. 207), the Court explained that

> TCNB's motion [for reconsideration] does not appear to address the issue of how or why Plaintiffs' unpaid principal and interest on the Note (Doc. 206 at 3:1–2) is distinct from Plaintiffs' debt on the note (*id.* at 3:15–18) extinguished by the Trustees Sale and language in the Trustees Deed Upon Sale. Accordingly, IT IS ORDERED that TCNB may file a 2-page (exclusive of captioning) supplemental brief on this issue[.]

1  Memorandum (Doc. 208) regarding the essential character of the funds secured by the
2  Bond. The Court has not requested that Plaintiffs respond to TCNB's motion. *See*
3  LRCiv 7.2(g)(2).

4  **I.    LEGAL STANDARD**

5  Generally, motions for reconsideration are appropriate only if: (1) the movant
6  presents newly discovered evidence; (2) the Court committed clear error or the initial
7  decision was manifestly unjust; or (3) an intervening change in controlling law has
8  occurred. *School Dist. No. 1J, Multnomah Cnty., Or. v. AC and S, Inc.*, 5 F.3d 1255, 1263
9  (9th Cir. 1993). A party should not file a motion to reconsider to ask a court "to rethink
10 what the court had already thought through, rightly or wrongly." *Above the Belt, Inc. v.*
11 *Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). "No motion for
12 reconsideration shall repeat in any manner any oral or written argument made in support
13 of or in opposition to the original motion." *Motorola, Inc. v. J.B. Rodgers Mech.*
14 *Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). The Court ordinarily will deny "a
15 motion for reconsideration of an Order absent a showing of manifest error or a showing
16 of new facts or legal authority that could not have been brought to its attention earlier
17 with reasonable diligence." LRCiv 7.2(g)(1).

18 **II.   ANALYSIS**

19 Here, TCNB does not contend that there is newly discovered previously
20 unavailable evidence or that there has been an intervening change in controlling law.
21 Rather, TCNB argues that "[r]econsideration is appropriate here because there was clear
22 error in the Order based on undisputed facts relating to the credit bid at the Trustee's
23 Sale, as well as the timing of the motions seeking to exonerate the [B]ond." (Doc. 206 at
24 2). More specifically, TCNB argues that the Court: erred by (1) "premis[ing] its ruling on
25 the mistaken belief that TCNB made a 'full credit bid' at the Trustee's Sale," when the
26 bid was actually "merely a credit bid" (*id.*); and (2) "finding that TCNB's damages were
27 extinguished . . . because the damages it incurred, and its right to those damages, arose
28 prior to the Trustee's Sale" (*id.* at 5). The Court addresses each claim of error in turn.

### A. "Full Credit Bid"

TCNB argues that its $1,900,000 credit bid at the Trustee's Sale was not a "full credit bid" because the Plaintiff's debt obligation under the Note exceeded $2,258,220.36 at the date of the Trustee's Sale. (Doc. 206 at 3). The Court was aware of this fact at the time of its Order, but nonetheless determined that TCNB's credit bid *had the effect of* a full credit bid because TCNB asserts that its credit bid extinguished Plaintiffs' debt under the Note. (Doc. 199 at 7 (citing TCNB's papers)). As TCNB's motion adroitly explains, the full credit bid rule exists so that

> lenders can make a rational choice: bid in the full debt and let the matter rest, or bid a lesser amount and preserve any rights that may exist to seek a deficiency judgment or to pursue others for insurance, tort damages, and so forth. [*M&I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 866 (D. Ariz. 2011)]. This is exactly what TCNB did here—it elected to bid less than the full amount of the debt[.]

(Doc. 206 at 4). In fact, the Court agrees with TCNB that, to the extent that TCNB credit bid less than the total debt obligation at the time of the Trustee's Sale,[3] TCNB did not submit a "full credit bid" here. As explained in *Coughlin*, TCNB's less-than-full credit bid preserved TCNB's "rights that may exist to seek a deficiency judgment" against Plaintiffs. 805 F. Supp. 2d at 866.

Practically speaking, however, TCNB vitiated these possibly-existing rights against Plaintiffs by repeatedly and expressly representing to the Court that TCNB's (apparently less-than-full) credit bid extinguished Plaintiffs' debt obligations under the Note:

- "In this case, the fact that TCNB was the successful bidder for the Property at the Trustee's Sale, through a credit bid, means that Plaintiffs' debt under the Note was extinguished." (Doc. 180 at 3 (citing *Coughlin*, 805 F. Supp. 2d at 858)).
- "[Extinguishment of the debt under the Note] also does not mean that Plaintiffs could not be held liable to TCNB for any other actions apart from their debt on the

---

[3] And to the extent that the note-holder can submit a "partial" credit bid at a Trustee's Sale.

1 Note." (Doc. 180 at 3).

2 - "The only thing which [Arizona's anti-deficiency statute,] A.R.S. § 33-814(G)[,] does is prevent TCNB from seeking the balance of debt owed on the Property after the Trustee's Sale of the Property." (Doc. 180 at 3 (citing *Coughlin*, 805 F. Supp. 2d at 858)).

- "Through its Reply in Support of the Motion to Exonerate the Bond, TCNB acknowledged that as a result of being the successful bidder, it made a 'credit bid' which thereby extinguished Plaintiffs' debt on the Note." (Doc. 206 at 3 (citing Doc. 180 at 3)).

- "In other words, TCNB cannot seek a deficiency judgment against Plaintiffs for the remaining balance due and owing on the Note after the Trustee's Sale." (Doc. 206 at 3).

As TCNB repeatedly and expressly concedes, Plaintiffs' debt obligations under the Note have been extinguished. Thus, with respect to Plaintiffs, TCNB's less-than-full credit bid has the same operative effect as a full credit bid—extinguishing Plaintiffs' debt obligations under the Note. Consequently, regardless of the precise character of TCNB's credit bid, TCNB has no legal right or entitlement to any damages or judgment seeking the unpaid portion of Plaintiffs' debt under the Note, including debt under the Note masquerading as damages for wrongful enjoinment.[4]

---

[4] Indeed, TCNB appears to agree that, in this case, the operative effect of a full credit bid is to extinguish all of TCNB's damages attributable to Plaintiffs and stemming from the Note, including those for wrongful enjoinment:

> In the Order, the Court concludes that "TCNB extinguished its damages resulting from Plaintiffs' debt obligations . . . ." [(Doc. 199 at 6–7)]. However, this conclusion is premised on the faulty assumption that TCNB made a full credit bid, *which would have extinguished its damages*. Because TCNB merely made a credit bid, the damages which it felt at the hand of Plaintiffs as a result of *being wrongfully enjoined* from proceeding with the Trustee's Sale [were] not extinguished."

(Doc. 206 at 4 (emphasis added)). Although, obviously, TCNB disagrees with the Court's conclusion that TCNB's less-than-full credit bid had the same operative effect as a full credit bid because of TCNB's repeated and express representations to the Court (as well as, perhaps, Arizona's anti-deficiency statute, A.R.S. § 33-814(G)).

- 4 -

Nonetheless, TCNB attempts to circumvent the consequences of extinguishing Plaintiffs' debt obligations under the Note by mischaracterizing the Bond proceeds as some nonspecific thing other than a debt obligation under the Note. (Doc. 180 at 3–4 ("exoneration of the bond is premised on a Rule of Civil Procedure, separate and apart from the efforts of TCNB to enforce the Note"); Doc. 208 at 2–3 ("The Note and the damages suffered by wrongful enjoinment are distinct and separate."). While the Court agrees with TCNB that extinguishment of the debt under the Note "does not mean that any other debt Plaintiffs had to TCNB also magically disappeared" (Doc. 180 at 3), TCNB has failed to adequately explain how the damages the Bond secures (i.e. damages for wrongful enjoinment) are something other than a debt obligation under the Note—and therefore the type of debt that *does* magically disappear.

Here, it is beyond dispute that the quanta of damages for wrongful enjoinment contemplated by the Bond consisted of Plaintiffs' missed mortgage payments otherwise due under the Note. At the Exoneration stage, TCNB explained[5] that,

> [o]n the most basic level, the damages incurred by TCNB in being wrongfully enjoined since 2009 are *the payments on the Note not being made by the Plaintiffs* from the time TCNB owned the Note through the date the injunction was dissolved, as well as the attorneys' fees TCNB incurred in seeking to conduct the Trustee's Sale and have the Court find Plaintiffs' claims were futile.[6]

(TCNB Reply in Supp. of Mot. to Exonerate Bond and Resp. to Pls.' Cross-Mot. to Exonerate Bond, Doc. 180 at 5 (emphasis and footnote added)). At the instant Reconsideration stage, TCNB again explained the relation between the Note and the wrongful enjoinment damages: "[t]he Superior Court elected to multiply the time TCNB

---

[5] TCNB is reminded of the doctrine of judicial estoppel: "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

[6] In the Court's June 30, 2014 Order, the Court determined that the Bond did not secure TCNB's attorneys' fees (Doc. 199 at 8–9); TCNB has not asked the Court to reconsider this ruling (*see* Docs. 206, 208).

1  was delayed by the monthly payment amount as its reasonable estimate of damages."
2  (TCNB's Supplemental Br., Doc. 208 at 2 (citing Superior Ct. Orders, Doc. 208 at Ex.
3  A)). Moreover, TCNB has consistently proffered a simplistic wrongful enjoinment
4  damages calculation: the amount required to pay-off the Note at the time of the Trustee's
5  Sale minus the $1,900,00.00 credit bid (which results in an amount exceeding the Bond
6  amount). (*See* Docs. 176, 180, 206, 208). Given that TCNB, itself, clearly believes the
7  quanta of its wrongful enjoinment damages is the missed mortgage payments, TCNB
8  cannot expect the Court to come to a different conclusion.

9  By definition, missed mortgage payments are a debt under the Note—a debt
10 TCNB acknowledges that it extinguished by effect of its credit bid. Consequently, the
11 Court cannot agree with TCNB that "[t]he Bond was not designed to reimburse TCNB
12 for missed payments on the Note, but instead, to compensate TCNB for damages it
13 suffered from the delayed enforcement of its legal rights." (Doc. 208 at 2). Rather,
14 because the essence and quanta of these wrongful enjoinment damages *are* the missed
15 mortgage payments (a debt under the Note), the damages secured by the Bond and the
16 debt under the Note are neither separate nor distinct. Here, the Superior Court's Orders
17 and TCNB's representations to the Court establish that this Bond was designed to
18 compensate TCNB for damages it suffered from the delayed enforcement of its legal
19 rights *by reimbursing* TCNB for missed payments on the Note. Unfortunately for TCNB,
20 the extinguishment of Plaintiffs' outstanding debt obligations under the Note
21 extinguished TCNB's rights to the outstanding balance of the Note, regardless of whether
22 TCNB pursued the balance through a deficiency action or through exoneration (via
23 entitlement to wrongful enjoinment damages) of this[7] Bond.

24 In sum, the Court finds that regardless of whether or not TCNB made a full or

---

[7] To be clear, the Court does not hold that every wrongfully-enjoined note-holder who extinguishes a debtor's obligations under the note is not entitled to wrongful enjoinment damages secured by an injunction bond. The result here may have been different if the essence and quanta of these wrongful enjoinment damages were something other than a debt under the Note (for example, the fair-market rental value of the home secured under the Note and wrongfully possessed by Plaintiffs during the pendency of the wrongful injunction, *see* Ariz. R. Eviction P. 17(c)).

- 6 -

partial credit bid, TCNB extinguished Plaintiffs' debt obligations under the Note, including entitlement to the wrongful enjoinment damages at issue here. Accordingly, with regard to the full credit bid rule, the Court does not find clear error or manifest injustice in its June 30, 2014 Order.

### B. Timing of TCNB's Motion to Exonerate the Bond

Alternatively, TCNB argues (Doc. 206 at 5–7) that "the Order finding that TCNB's damages were extinguished should be reconsidered because the damages it incurred, and its right to those damages, arose prior to the Trustee's Sale" (*id.* at 5). More specifically, TCNB argues that the Bond was held in "trust" for TCNB, the wrongly enjoined party, because the injunction was dissolved prior to the Trustee's Sale (and therefore prior to the extinguishment of Plaintiffs' debt obligations under the Note). The Court finds that this is a new argument raised for the first time in TCNB's Motion for Reconsideration. (*Compare* Docs. 176, 180 (never using the word "trust"—or concept—outside of the context of the Deed of Trust and Trustee's Sale) and June 30, 2104 Order, Doc. 199 (not addressing the instant "trust" argument), *with* Doc. 206 at 5–7). Consequently, the Court will not consider the "trust" argument. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) ("Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs.") (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988).

### III. CONCLUSION

TCNB must show more than a disagreement with the Court's decision; the Court should not grant a motion for reconsideration unless there is need to correct a clear error of law or prevent manifest injustice. *See Motorola, Inc*, 215 F.R.D. at 586. Such is not the case here. TCNB has failed to present the Court with cause to reconsider its June 30, 2014 Order exonerating the Bond at issue in favor of the Plaintiffs. For the reasons set forth above, TCNB's Motion for Reconsideration is denied.

Accordingly,

1 **IT IS ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 206) is
2 DENIED.
3 **IT IS FURTHER ORDERED** that the Court's Stay of the release of the Bond
4 proceeds (Doc. 203) is hereby lifted as follows: the Bond in the amount of $268,330.00 is
5 released to Plaintiffs, Michael and Jennifer Grady (to be sent to their counsel).
6 Dated this 5th day of August, 2014.

James A. Teilborg
Senior United States District Judge